# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 6049 | **DATE** | December 19, 2011 |
| **CASE TITLE** | Bernard Mims (R-55072) vs. Wexford Health Sources, et al. | | |

**DOCKET ENTRY TEXT:**

Plaintiff may proceed with his amended complaint [7] against the following Defendants: Wexford Health Sources, Kevin Halloran, Dr. Partha Ghosh, Dr. Liping Zhang, Dr. R. Shute, Dr. Latoya Williams, and Dr. Aguinaldo. The clerk shall issue summonses for service of the amended complaint [7] on these Defendants. The other Defendants are dismissed.

■ [For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff Bernard Mims (R-55072), an inmate at the Stateville Correctional Center, has paid the $350 filing fee and has filed an amended complaint in accordance with the Court's September 28, 2011, order. The Court's preliminary review of the amended complaint, *see* 28 U.S.C. § 1915A, reveals that Plaintiff may proceed against some, but not all, of the 15 Defendants he lists. Plaintiff alleges that he hurt his hand in 2007. Dr. Agunaldo examined the hand, informed Plaintiff that it appeared that a broken bone had healed improperly, but did nothing more for Plaintiff's complaints of pain. Plaintiff then saw Dr. Liping Zhang, who ordered an X-ray, which revealed a fracture of the 4th and 5th metacarpal, which had healed improperly. Plaintiff was also seen by Physician Assistant Latoya Williams, who commented that the hand looked deformed and who recommended an MRI, which was never taken. Plaintiff states that Dr. Zhang, Dr. Ghosh, and Dr. Shute also recommended an MRI, but Wexford would not approve it. Plaintiff alleges that all these doctors refused to prescribe medication for pain, despite Plaintiff's repeated complaints of pain.

With respect to Wexford Health Sources, the company hired to provide medical services to Illinois inmates and which employs the Stateville's doctors, Plaintiff states that he wrote letters to Wexford and its Chief Executive Officer Kevin Halloran about the lack of treatment he was receiving, his need for an MRI, and his complaints of pain; however, nothing was done. Plaintiff names additional Wexford officials as Defendants, but does not state how they were involved.

With respect to Stateville Warden Marcus Hardy, Plaintiff states that Hardy could have intervened to ensure that proper medical care was being given, but did not.

Plaintiff further alleges that he submitted several grievances that were never processed, thus preventing him from exhausting his administrative remedies. Plaintiff names Sarah Johnson, Salvador Godinez, and an unknown person referred to Jane Doe with respect to his claims that his grievances were not handled properly.

Lastly, Plaintiff asserts that Nurse Encarnacion examined him but ignored Plaintiff's high blood pressure.
**(CONTINUED)**

isk

## STATEMENT

Having conducted a preliminary review of the amended complaint, *see* 28 U.S.C. § 1915A, Plaintiff may proceed against Drs. Ghosh, Zhang, Aguinaldo, Shute, Williams, as well as Wexford and Kevin Halloran. Plaintiff alleges that he complained of pain and the need for further treatment of his hand for a bone that healed improperly, but that the doctors provided neither medication for the pain nor additional treatment. *See Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011); *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008) (inadequate response to complaints of pain can establish deliberate indifference to a serious medical need). Plaintiff may also proceed against Wexford and Halloran, who allegedly not only ignored Plaintiff's letters about not getting treatment but also refused recommendations that Plaintiff receive an MRI. *Hayes*, 546 F.3d at 527 (a failure to investigate complaints of insufficient medical care can rise to the level of deliberate indifference).

With respect to Warden Hardy, however, Plaintiff does not state that he informed Hardy of the need for better medical care. Rather, Plaintiff's assertions against Hardy indicate that Hardy is named only in his role as a supervisory official, "the highest office . . . at Stateville" with "the final say on any & everything that goes on . . . in the institution." (Amended Compl. at 7.) A supervisory official cannot be held vicariously liable for the actions of subordinate employees, but must have been personally involved in some way. *See J.H. ex rel. Higgin v. Johnson*, 346 F.3d 788, 793 (7th Cir. 2003). Although Plaintiff makes general assertions that inadequate health care is the norm at Stateville, which arguably suggests an unconstitutional custom or policy, Plaintiff's claims of inadequate care center on Wexford's indifference, as opposed to the prison's. Plaintiff's assertions against Hardy are thus insufficient to state a claim against him.

With respect to Sarah Johnson, Salvador Godinez, and the unnamed grievance officer, Plaintiff asserts only that these Defendants failed to process his grievances, which does not state a valid § 1983 claim. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005), citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

Lastly, with respect to Nurse Encarnacion, Plaintiff names her for failing to diagnose or treat his high blood pressure. This claim, however, is unrelated to his claim about his hand asserted against the other Defendants. Under *George v. Smtih*, 507 F.3d 605, 607 (7th Cir. 2007), "[u]nrelated claims against different defendants belong in different suits." Plaintiff's claim about his high blood pressure is unrelated, or so minimally related, to his other claims that it should be brought in a different suit.

Accordingly, for the reasons stated above, Plaintiff may proceed with his claims against Drs. Ghosh, Zhang, Aguinaldo, Shute, and Williams, as well as Wexford Health Sources and Kevin Halloran. The clerk shall issue summonses for service of the amended complaint on these Defendants. The other Defendants are dismissed. The Marshal is directed to execute service. Any service forms necessary for Plaintiff to complete will be sent to him by the Marshal. Plaintiff's failure to timely return completed forms to the Marshal may result in the dismissal of unserved Defendants. The U.S. Marshal is directed to make all reasonable efforts to serve Defendants. With respect to any former jail employee who can no longer be found at the work address provided by Plaintiff, officials at the Stateville and Wexford officials shall furnish the Marshal with Defendant's last known address. The information shall be used only for purposes of effectuating service, or for proof of service if a dispute arise. Any documentation of the address shall be retained only by the Marshal, and shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to Defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service. If waivers are not received, however, the Marshal must attempt personal service.

Plaintiff is instructed to file all future papers concerning this action with the clerk of court in care of the Prisoner Correspondent. Plaintiff must provide the court with the original plus a complete judge's copy, including any exhibits, of every document filed. In addition, Plaintiff must send an exact copy of any court filing to the Defendants, or to defense counsel, if an attorney has entered an appearance. Every document filed with the court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to Plaintiff.