IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| BERNARD MIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 11 C 6049 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC. et al., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Bernard Mims, an inmate in the custody of the Illinois Department of Corrections, brings this action against Defendants Wexford Health Sources, Inc., Stateville Correctional Center, Partha Ghosh, Liping Zhang, Salvador Godinez, Marcus Hardy, Arthur Funk, Louis Shicker, Richard Shute, Jennifer Encarnacion, Sarah Johnson, Kevin Halloran, LaTonya Williams, Evaristo Aguinaldo, Jane-Doe-Grievance Officer and the Illinois Department of Corrections pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to a serious medical condition in violation of the Eighth Amendment. Specifically, Mims complains of pain in his right hand while an inmate at Stateville Correctional Center. Mims alleges that the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to provide him adequate medical treatment, including: medication to address the pain in his right hand, and failure to provide an MRI or CAT scan to determine the extent of damage to his hand. The Defendants move for summary judgment, arguing that Mims did not exhaust administrative remedies as required by the Prison Litigation Reform Act and in the alternative that the level of care administered to Mims does not rise to the level of a constitutional violation.

For the reasons stated herein, Defendants' motion for summary judgment is granted.

## BACKGROUND

Mims filed two grievances with the Illinois Department of Corrections alleging that he was receiving inadequate medical treatment on his right hand from physicians in Stateville Correctional Center. (Dkt. 126-2 at 46, 48-49). Specifically, on April 8, 2011, Mims submitted a grievance generally asserting that his right hand was in a significant amount of pain, that his March 23, 2011 appointment with a physician was canceled, and that he was never rescheduled. (Dkt. 126-2 at 48). However, Mims's March 23, 2011 appointment was canceled due to a prison lockdown and rescheduled to April 14, 2011. (Dkt. 125, Def. 56.1 St. ¶ 45). The April 14, 2011 appointment was likewise canceled due to a lockdown at Stateville. (*Id.*).

In spite of the cancellations due to the prison lockdowns, on April 21, 2011, Dr. Richard Shute, the medical director of Wexford Health Sources, saw Mims for complaints of pain in his right hand. (*Id.* at ¶ 46). Even though Dr. Shute saw Mims on April 21, 2011, Mims filed a second grievance with the Department of Corrections on April 28, 2011. (Dkt. 126-2 at 46). Similar to his first filing, Mims generally complained about pain in his right hand and his desire to see a physician. (*Id.*). The Department of Corrections responded to both of Mims's grievances on May 9, 2011, stating that Mims was scheduled to be seen by a physician on May 19, 2011. (*Id.* at 46, 48-49). Less than three weeks after Mims filed his second grievance, Dr. Shute saw Mims again on May 19, 2011 and examined his right hand. (Def. 56.1 St. ¶ 47; Dkt. 125-2 at 4). A May 2, 2011 X-Ray of Mims's hand showed a solidly healed fracture, a lack of hand edema, and that Mims's fourth and fifth fingers were missing knuckles. (*Id.*).

The Administrative Review Board received both Mims's April 8, 2011 and April 28, 2011 grievance filings on June 10, 2011. (Dkt. 126-2 at 44, 47). The Board responded to Mims's

correspondence on June 17, 2011. (*Id.*). Regarding his April 8, 2011 grievance, after Mims had seen a doctor twice and received an X-Ray of his right hand, the Board concluded that the grievance not been timely submitted for review by the Board. (*Id.* at 47). With respect to Mims's April 28, 2011 grievance, the Board requested that Mims submit additional information in the form of a copy of the Committed Person's Grievance Report, including the Grievance Officer's and Chief Administrative Officer's response in order to proceed with his appeal. (*Id.* at 44). The record contains no indication that Mims presented any further information to the Board.

## **LEGAL STANDARD**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). Whether a fact is material depends on the underlying substantive law that governs the dispute, and a genuine dispute is one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted). If the moving party has properly supported its motion, the nonmoving party must come forward with facts that show there is a genuine issue for trial. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013). Where there are genuine disputes as to material facts, courts view those facts in the light most favorable to the nonmoving party when deciding motions for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). And when deciding motions for summary judgment, courts do not weigh evidence or make credibility determinations because such considerations are for the jury. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011).

## DISCUSSION

The PLRA's "invigorated exhaustion provision" requires incarcerated plaintiffs to exhaust all available administrative remedies before filing a federal civil rights lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 54 (2006) (internal quotation marks omitted) (citing 42 U.S.C. § 1997e ("No action shall be brought under [42 U.S.C. § 1983] . . . until such administrative remedies as are available are exhausted."). Exhaustion is mandatory; the district court has no discretion to waive a failure to comply with the requirements. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). "The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before the litigation begins." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam). "A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); (citing *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir.2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

Strict compliance with the applicable state grievance procedures is a necessary prerequisite to a federal lawsuit under the PLRA. *See Dole*, 438 F.3d at 809. In Illinois, an offender seeking to resolve a problem with prison officials must "first attempt to resolve incidents, problems, or complaints other than complaints concerning disciplinary proceedings through his or her counselor." Ill. Admin. Code tit. 20, § 504.810(a). If that attempt is unsuccessful, the putative plaintiff must file a written grievance on a grievance form within 60 days of the discovery of the incident, occurrence, or problem that gave rise to the grievance. *Id.* The written grievance must contain "factual details" including "the name of each person who is the subject of" the grievance. § 504.810(b). If the offender does not know the name of the

individuals who are the subject of the grievance, he or she must include "as much descriptive information about the individual as possible." *Id.* A Grievance Officer then evaluates the grievance and issues a recommendation to the Chief Administrative Officer. The Chief Administrative Officer then provides a response to the offender. If the Chief Administrative Officer's response does not satisfy the offender, the offender may appeal in writing to the Director within 30 days of the decision. § 504.850(a). The Administrative Review Board then issues a decision on the Director's behalf.

Neither of Mims's two filed grievances is sufficient to establish that Mims exhausted administrative remedies as to any individual defendant. The grievances contain no names of individuals and make no attempt to describe any unknown individual with particularity. Moreover, it is clear that Mims did know the names of the defendants at the time of the grievance as the record contains many letters from Mims to various individuals who are now named as defendants. Thus, the grievances do not comply with the particularity requirement of § 504.810 and fail to establish that Mims pursued any administrative remedy as to any named individual defendant in the present case.

Mims's failure to comply with the applicable administrative appellate procedures dooms the remainder of his federal suit. Unsatisfied with the relief granted following his grievances, Mims appealed both grievances. The Administrative Review Board rejected the appeal of the April 8 grievance as it was not timely filed. (Dkt. No. 126-2 at 47). Mims failure to timely file the appeal and the Administrate Review Board's refusal to consider it renders that claim "indefinitely unexhausted." *Dole*, 438 F.3d at 809. With respect to the April 28, 2011 grievance, the Administrative Review Board requested a copy of the Grievance Report. The record contains no such report and Mims's affidavit in support of his opposition to summary judgment does not

state that he submitted such a report. Mims's failure to comply with the Administrative Review Board's procedures again renders his claim "indefinitely unexhausted." *Id.*[1]

Because the Court finds that Mims failed to exhaust available administrative remedies, the Court need not consider whether Mims suffered from an objectively serious medical condition or whether the defendants acted with deliberate indifference.[2]

## CONCLUSION

For the reasons stated herein, the Court grants the Defendants' Motion for Summary Judgment.

_____
Virgini
United States District Court Judge
Northern District of Illinois

Date: September 30, 2014

---

[1] The Return of Grievance Correspondence from the Administrative Review Board indicates that it applies to a grievance filed on February 23, 2011 as well as the April 8 grievance. The February 23 grievance is not in the record, but it would not affect the Court's decision regardless of its content. The fact that Mims failed to timely appeal dooms his ability to litigate the content of that grievance in federal court as well.

[2] Notwithstanding Mims's failure to exhaust administrative remedies, the Court doubts whether Mims could have established that the defendants acted with deliberate indifference. The record reflects that Mims received treatment consistently from 2007 to 2012. During this time, Mims visited doctors dozens of times and was prescribed Motrin and Naproxen for his hand pain. (Dkt. 125-4 at 4-6, 9-10). *See, e.g.*, *Verser v. Elyea*, 80 F. App'x 522, 524 (7th Cir. 2003) (inmate's contention that prison officials were deliberately indifferent to medical needs was frivolous when he received frequent treatment over the course of twelve months).